# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 2571 | DATE | ½/2002 |
| CASE TITLE | Cannon vs. National Railroad Passenger Corp. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: Cannon has not presented evidence that indicates Amtrak did not believe him to be dishonest. We echo the Seventh Circuit's conclusion that "an employer who honestly believes it is firing a fraudulent employee may not be liable for intentional discrimination." Thus, even if Cannon had established a prima facis case, his claim would still fail for lack of pretext. For the reasons set forth, Amtrak's summary judgment motion (5-1) is granted. The ruling date of 1/17/02 is stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | JAN 04 2002 | |
| ✓ | Notices mailed by judge's staff. | | date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | 22 |
| ✓ | Mail AO 450 form. | | 1/2/2002 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| | GL  courtroom deputy's initials | Date/time received in central Clerk's Office | GL  mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JIMMIE CANNON,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　Plaintiff,　　　　　　　　　)
　　　　　v.　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)　　No. 01 c 2571
NATIONAL RAILROAD PASSENGER　　)
CORPORATION (AMTRAK),　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　Defendant.　　　　　　　　)

MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, Chief Judge:

Upon Amtrak's conclusion that Jimmy Cannon had submitted requests for unauthorized and unworked overtime pay, Cannon was terminated as a foreman for defendant National Railroad Passenger Corporation (Amtrak) on August 31, 1999. Cannon protested this decision, and brought suit under 42 U.S.C. § 1981, alleging that Amtrak discriminated against him on the basis of race when it terminated him. Presently before us is Amtrak's motion for summary judgment. For the reasons stated below, summary judgment is granted.

BACKGROUND

Amtrak employed Cannon from 1976 until his termination in August 1999. Throughout his employment with Amtrak, Cannon was a member of the American Railway and Airway Supervisors Association (ARASA), whose collective bargaining agreement with Amtrak set the terms and conditions of Cannon's employment.

In 1997, Cannon bid on and obtained a Foreman II job at Chicago Union Station, a supervisory position within Amtrak. He was working in this capacity on August 3, 1999, when Cannon's supervisor, Herman Gary, signed an Authorization to Pay form for Cannon that did not have the number of overtime hours filled in. Mr. Gary later testified at Cannon's disciplinary proceeding that he signed the form knowing Cannon had worked approximately one hour of

1



overtime and had administrative tasks to complete before he left and that he trusted Cannon to complete his duties and fill in the appropriate number of overtime hours. Mr. Gary denied giving Cannon verbal authorization to stay and work on two late trains expected that evening. Cannon, however, testified that Mr. Gary had signed a "blank check" allowing him to work further overtime.

On August 4, 1999, Mr. Gary notified Stephanie Hulett, a Program Manager, that Cannon had submitted an unauthorized Authorization to Pay for ten hours of overtime on August 3. The submitted form stated that Cannon had worked on the two late trains the preceding evening, an assertion Mr. Gary believed to be false. Cannon was removed from service awaiting a formal investigation. Cannon then approached Mr. Lewis, Mr. Gary's superior, and maintained that he had worked the overtime hours in dispute. Mr. Lewis promptly responded to this assertion, asking multiple employees if they had had any contact with Cannon the night of August 3, and reviewing Amtrak records that might indicate Cannon's presence that night. He found nothing to support Cannon's claim except the testimony of three cleaners who informed him that they had seen Cannon sleeping in his car around 7:00 pm that evening.

At a disciplinary proceeding conducted on August 19, 1999. Amtrak presented employees who testified that they did not see or hear Cannon working after 3:30 pm on August 3, and that they would have seen or heard him had he been working. Mr. Gary testified that he had not authorized the overtime. Mr. Lewis offered testimony regarding his interviews with employees on August 4 in his search for evidence that Cannon had indeed worked the hours he claimed. Cannon, with representatives from ARASA, produced no witnesses in his defense, but averred that he had worked the evening in question (although not directly with anyone else) walking through the trains, monitoring the radio, and reviewing materials to identify failing equipment.

On August 31, 1999, the hearing officer issued his opinion that Amtrak had proven its case against Cannon. Relying on this decision, Amtrak terminated Cannon, stating that he had violated

its Standards for Excellence in being dishonest about his hours worked. Cannon and ARASA appealed and the Public Law Board reviewed and affirmed the decision in December 1999.

Cannon subsequently filed this action under § 1981 seeking back pay, declaratory judgment, and injunctive relief. He requests a declaration that Amtrak racially discriminated against him, reinstatement to his position with back pay and benefits, award of attorney's fees, and compensatory and punitive damages.

ANALYSIS

I. Standard of Review

Summary judgment is appropriate where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is genuinely at issue only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party may demonstrate that summary judgment in its favor is appropriate by establishing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). To avoid summary judgment, the nonmoving party needs to establish an issue regarding an essential element of its case, as "a complete failure of proof concerning an essential element of the nonmovant's case necessarily renders all other facts immaterial." *Oest v. Ill. Dep't of Corrections*, 240 F.3d 605, 610 (7th Cir. 2001) (quoting Celotex, 477 U.S. at 323). In deciding whether summary judgment is appropriate, we must accept the nonmoving party's evidence as true, and draw all inferences in his favor. Anderson, 477 U.S. at 255.

As Cannon does not claim to have direct evidence of discrimination in support of his claim, we review the case under the burden-shifting method set forth in McDonnell *Douglas Corp. v. Green*, 411 U.S. 792 (1973). See *Bratton v. Roadway Package System, Inc.*, 77 F.3d

3

168, 176 (7th Cir. 1996) (applying the McDonnell *Douglas* test to a § 1981 case). This method of analysis involves three steps. First, the plaintiff must establish a prima facie case of discrimination. M*cDonnell Douglas*, 411 U.S. at 802. If the plaintiff succeeds in this, the burden shifts to the defendant to offer a legitimate, nondiscriminatory reason for its action. I*d.* Finally, if the defendant meets this requirement, the burden shifts back to the plaintiff to present evidence that the reason provided by the defendant is pretextual. I*d.* at 804. It must be noted that if the plaintiff does not satisfy his initial burden of establishing a prima facie case, the defendant is entitled to summary judgment, and the court need not proceed to evaluate the second and third steps in the process. Oest, 240 F.3d at 612.

II. Prima Facie Case of Discrimination

To establish a prima facie case of discrimination Cannon must show that 1) he is a member of a protected class, (2) he performed his job satisfactorily, (3) he suffered an adverse employment action, and (4) the defendant treated similarly situated employees outside his class more favorably. Russell *v. Bd. of Trustees of Univ. of Ill. at Chicago*, 243 F.3d 336, 341 (7th Cir. 2001). Cannon succeeds in establishing prongs one and three without contest – as an African-American, he is a member of a protected group, and his termination was an adverse employment action. See Oest, 240 F.3d at 612 (citing Crady *v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)). The second and fourth prongs are more problematic.

In cases where the defendant employer asserts as its reason for dismissing the plaintiff the plaintiff's inadequate job performance, the second prong is closely intertwined with the question of pretext, the third step in the McDonnell *Douglas* method. G*ordon v. United Airlines, Inc.*, 246 F.3d 878, 886 (7th Cir. 2001). This situation arises here. Amtrak asserts it dismissed Cannon for falsifying his overtime report, and that in light of this dishonesty, Cannon was not performing his job satisfactorily. Cannon claims that he did work the hours at issue, and that he

4

was meeting all performance expectations. We need not decide which party is correct in order to ascertain whether Cannon has established a prima facie case. The M*cDonnell Douglas* analysis must be applied flexibly, and in circumstances where the dispute centers on whether the employee was dismissed for failing to meet expectations or for discriminatory reasons, it is acceptable to bypass the second prong of the prima facie analysis and address the issue when we analyze pretext. See *Curry v. Menard, Inc.*, 270 F.3d 473, 478 (7th Cir. October 29, 2001); Flores *v. Preferred Technical Group*, 182 F.3d 512, 515 (7th Cir. 1999) (where an employee was dismissed for purportedly failing to meet the employer's performance expectations, and the same people who decided the employee was not meeting expectations are the ones the employee accuses of discriminating against him, it makes "little sense . . . to discuss whether [h]e was meeting [his] employer's reasonable expectations").

Therefore, we move on to the fourth prong, where Cannon's case fails. He has not identified any Amtrak employees who were treated more favorably when believed to have presented false overtime information, or even more generally, when believed to have been dishonest with the company. In fact, the only other false timecard violators referenced in the record were two white employees who were subsequently dismissed. This dearth of information in the record defeats Cannon's case. See Lalvani *v. Cook County*, No. 00-1603, 2001 U.S. App. LEXIS 21878, at *9 (7th Cir. October 15, 2001) (female plaintiff failed to identify a single employee similarly situated who was terminated during the downsizing); Logan *v. Kautex Textron N. Am.*, 259 F.3d 635, 639 (7th Cir. 2001) (black plaintiff failed to satisfy fourth prong because white employees were also terminated in similar manner); cf. Russell, 243 F.3d at 342 (plaintiff meets prong by identifying two male employees who submitted timesheets with errors but were not dismissed); Gordon, 246 F.3d at 888 (plaintiff satisfies prong by pointing to a white flight attendant charged with same misconduct as plaintiff, who was not terminated); Curry, 270 F.3d at 479-480 (fourth prong established by evidence that two non-black employees had similar

5

cash register discrepancies but were not suspended or terminated). Any assertions by Cannon that a white employee would not have been terminated for this alleged dishonesty fail without supporting evidence. See *Oest*, 240 F.3d at 614 ("uncorroborated, conclusory statements that similarly situated co-workers were treated differently" are insufficient to satisfy this prong and avoid summary judgment).

Although we grant summary judgment for Amtrak because Cannon has failed to establish a prima facie case of discrimination, we briefly address the second and third steps of the McDonnell Douglas analysis.

### III. Legitimate, Nondiscriminatory Reason for Action

The second step in the *McDonnell Douglas* analysis is for the defendant to offer a legitimate, nondiscriminatory reason for its action. 411 U.S. at 802. The burden of proof on the employer in this step is "quite light . . . the mere articulation of the reason . . . puts the onus back on the plaintiff to prove the pretext." *Flores*, 182 F.3d at 516 (internal citation omitted). We feel Amtrak has satisfied its burden here. Amtrak states that it terminated Cannon for falsifying his overtime records, an action contrary to its Standards of Excellence. We find this to be a legitimate, nondiscriminatory reason to dismiss an employee.

### IV. Pretext

The final step of the McDonnell *Douglas* analysis is for the plaintiff to present evidence that the reason for dismissal proffered by the defendant was a pretext for discrimination. 411 U.S. at 804. This step does not require Cannon to prove that he did work the overtime hours at issue. Rather, Cannon can demonstrate pretext by "showing either that a discriminatory reason more likely motivated the employer or that the employer's explanation is unworthy of credence." Chiaramonte *v. Fashion Bed Group, Inc.*, 129 F.3d 391, 398 (7th Cir. 1997), cert. *denied*, 523 U.S. 1118 (1998).

First, Cannon could have shown that a discriminatory reason motivated Amtrak by providing some sort of comparative evidence demonstrating that Amtrak would not have handled the issue of alleged dishonesty as it did and would not have come to the conclusion to terminate him were it not for his race. See *Kariotis*, 131 F.3d at 677; *Gordon*, 246 F.3d at 892 ("a showing that similarly situated employees belonging to a different racial group received more favorable treatment can also serve as evidence that the employer's proffered legitimate, nondiscriminatory reason for the adverse job action was a pretext for racial discrimination"). As discussed above regarding his failure to establish a prima facie case, Cannon does not present such evidence. He references niether other employees accused of timecard violations nor employees charged with violating the honesty provisions of the Standards of Excellence. There is a dearth of evidence in the record as to how Amtrak has treated similarly situated employees in the past.

Alternatively, Cannon could have sought to demonstrate that Amtrak's purported reason for terminating him - because Amtrak believed him to be dishonest - was not founded in good faith. To do so, Cannon needed to offer evidence that Amtrak did not honestly believe its conclusion that he lied about his overtime hours. Again, he fails to meet this evidentiary burden. Even if Amtrak were incorrect in its conclusion that Cannon did not work the overtime hours he claims, if it believed that he did not, Cannon has not shown pretext. See *McCoy v. WGN Continental Broad. Co.*, 957 F.2d 368, 373 (7th Cir. 1992) ("The issue of pretext does not address the correctness or desirability of reasons offered for employment decisions. Rather, it addresses the issue of whether the employer honestly believes the reason it offers"). Cannon has not presented evidence that indicates Amtrak did not believe him to be dishonest. We echo the Seventh Circuit's conclusion that "an employer who honestly believes it is firing a fraudulent employee may not be liable for intentional discrimination." *Kariotis*, 131 F.3d at 679. Thus, even if Cannon had established a prima facie case, his claim would still fail for lack of pretext.

7

## CONCLUSION

For the reasons set forth herein, Amtrak's summary judgment motion is granted. It is so ordered.

MARVIN E. ASPEN
United States District Judge

Dated: 1/2/02

8